## A. C. DOWNS *vs.* THE PLANTERS BANK.

In order to constitute a sufficient notice to charge an endorser, if it is to be sent by mail, it must, at farthest, be put into the post office in time to go by the mail of the day next succeeding the protest, if there be a mail which goes on that day ; and, if not, then by the first mail which goes afterwards.

The holder need not put the notice in the office on the same day the note is protested, but he must on the next day, in time for a mail of that day, unless it leaves at an unreasonably early hour.

The contract of an indorser is purely conditional. There are conditions precedent to his liability, and the holder must prove directly, and by positive evidence, that he has performed all that the law required him to perform, before he can charge the indorser.

Proof, therefore, that notice was sent by mail to an indorser, by nine o'clock, of the day succeeding the protest, without showing that no mail went out on that day, at an earlier hour, is insufficient to charge the indorser.

ERROR from the Warren circuit court.

The defendants in error sued the plaintiff in error, as indorser upon the following note :

"$750 00.                    VICKSBURG, 5th October, 1835.

"Twelve months and ten days after the 8th day of October, 1835, I promise to pay, without defalcation, to E. D. Downs or order, seven hundred and fifty dollars for value received, negotiable and payable at the office of the Planters Bank, State of Mississippi, at Natchez.

"ABIJAH DOWNS."

"The drawer will acknowledge notice at Vicksburg post office.

"1. Indorser will acknowledge notice at Vicksburg post office.

"2. Indorser will acknowledge notice at Vicksburg post office.

"3. Indorser will acknowledge notice at Mount Albon post office."

The note was indorsed by "E. D. Downs, Harris & Crichlow, A. C. Downs, Miles C. Folkes."

After reading the note as above set out, the plaintiff below offered in evidence the protest, by the notary of the note, which was in the ordinary form.

The plaintiff then proved, that Thomas Redman, the notary who protested the note, was dead, and then introduced and read to the jury a copy of the notorial records of said Redman, in these words, viz:

" UNITED STATES OF AMERICA,
" State of Mississippi, Adams county.

" By this public instrument of protest, be it known, that on the 21st day of October, 1836, at the request of E. P. Fourniquet, cashier, the holder of the original note, of which a true copy is here indorsed, I, T. Redman, notary public, residing in the city of Natchez, qualified according to law, went to the Planters Bank, demanded payment thereof, and by the teller was refused.   Whereupon I, the said notary public, at the request aforesaid, do hereby solemnly and publicly protest the said note, as well against the drawer thereof as against the acceptors, indorsers, and all who are, or may be concerned therein, for all exchange, re-exchange, costs, charges, damages or interest, suffered or to suffer for the non-payment of said note.   Thus solemnly done and protested.

" Given under my hand and the seal of my office, at Natchez, the day and year above written.

" T. REDMAN, Notary Public."

Then follows, in the notary's record, a copy of the note as above set out, with the following memorandums at the foot of it:

" E. D. Downs, Vicksburg.
" HARRIS & CRICHLOW, do.
" A. C. Downs, Mount Albon post office.
" MILES C. FOLKES, Vicksburg."

" All notices served this 22d day of October, 1836, at 9 o'clock, A. M., according to their several directions specified.

" T. R. Notary Public."

The plaintiffs then proved that Mount Albon was the nearest post office to the residence of the defendant, on the day of the protest of said note : and then closed the evidence.

The defendant then introduced R. M. Gaines, Esq., who stated, that on the 21st October, 1836, and before that time, the Planters Bank, at Natchez, had regular banking hours, from 10 o'clock, A. M., to 2 o'clock, P. M ; that according to the custom of the bank, debtors had until the close of the business hours of the bank, for the payment of their notes due at that bank.    He also stated that notes made payable to the bank were usually kept in the teller's drawer, on the day of their maturity in the bank.    This was all the testimony in the case.

The defendant's counsel asked the court to instruct the jury as follows, viz :

1. That the plaintiffs, before they can recover against the defendant as indorser, must prove the service of notice of non payment, or show due diligence as an excuse for not giving notice.

2. The plaintiffs must show that the note sued on, was in the bank during the whole of the banking hours of the day on which it matured.

3. That the statement of the notary, at the foot of the notarial copy of the same, in these words: " All notices served on this 22d October, 1836, at 9 o'clock, A. M., according to their several directions, as above specified," is not sufficient evidence of notice or diligence to give notice on which to charge the defendant.

4. The plaintiff must show that the notice was put in the post office at Natchez, and in time to go out by the first mail of the day succeeding the day of protest.

5. The plaintiff must show all the facts necessary to charge the indorser, without leaving anything to intendment or inference.

6. That the belief of the jury, that a fact exists, can only be founded upon evidence, and not mere opinion.

The first of said instructions asked by defendant, the court gave to the jury, but refused to give the remaining five as asked, but instructed the jury as follows, viz :

"If the defendant showed that the note was not in bank during banking hours, and was presented for payment before the close of the bank hours, then they would find for him; otherwise they must presume the notary did his duty as a public officer; that notice of protest must be shown to have been put in the post office at Natchez, in time to go out by the first mail of the day succeeding the protest, if the first mail of that day did not leave at an unusually early hour; that whether the notice was properly sent, the jury are to judge from all the facts and circumstances in the case; and if they believe from them, that the notice was properly *sent*, they would find for the plaintiff, and if not, then for the defendant; that they are to weigh the evidence, and decide according to the preponderance of proof."

The defendant's counsel excepted to the refusal of the court to give instructions asked for by him.

The jury having found a verdict for the plaintiffs, the defendant moved for a new trial, which the court below refused to grant. Bills of exception, embodying all the proof were signed, and the case brought here for revision.

The errors assigned are,

1. The court erred in refusing to give the instructions prayed for by defendant.

2. The court erred in giving the instruction it did give.

*George S. Yerger*, for plaintiff in error.

The defendant was sued as indorser of a promissory note, which was protested 21st October, 1836. Opposite to his indorsement on the note is written, "Mount Albon post office," thereby meaning that was his post office.

The only evidence of notice is the memoranda of a deceased notary, who states that " all notices were served (i. e. sent) this 22d day of October, 1836, at 9 o'clock, A. M., according to the several directions specified."

The court, amongst other things, was requested to charge the jury,

1. "That the statement of the notary, that all notices were

sent according to their several directions specified, was not suf-ficient evidence of notice.

2. "That the plaintiff must prove that notice was put into the post office at Natchez, in time to go out by the first mail of the day succeeding the day of the protest.

3. "That the plaintiff must prove all the facts necessary to charge the indorser, without leaving any thing to intendment or inference."

The court refused to give these instructions, but stated that notice must be sent by the mail of the succeeding day, if it did not leave at an unusually early hour; that they were to weigh the evidence, and decide according to the preponderance of proof; and if they believed the notice was properly sent, must find for plaintiff, &c.

1. Where the facts are ascertained, the sufficiency of notice is always a question of law to be decided by the court. *Van Hosen* v. *Van Allston,* 3 Wendell Rep. 75. 12 Wheaton Rep. 557. 11 Johns. Rep. 187.

2. Where a memorandum of a deceased notary is relied on to prove notice, it is always a question whether the statement or memoranda states facts which amount in law, to proof of notice. Thus, if he merely states he sent notice by mail, without stating when or where sent, it would be no evidence of legal notice. 20 Johns. Rep. 168.

The question then is, whether the statement of the notary, "All notices sent or served this 22d day of October, 1836, at 9, A. M., according to their several directions specified," is sufficient?

'I admit that the word "served" was intended for "sent," and that the words, "according to their several directions speci-fied," meant the notices were sent according to the directions specified on the note, by the indorsers designating the place of their residence, &c. This is the only sensible meaning of his words.

The statement, therefore, amounts to this: "That he sent notice to Downs, on the 22d October, 1836, at 9 o'clock, A. M., directed to Mount Albon, which was his place of residence."

Admitting this to be the meaning of the notary, is it sufficient evidence of notice to charge Downs?

The evidence to charge an indorser must be clear and conclusive. It is a condition precedent, and he is entitled to have it, says the supreme court of New York, proved by clear and undoubted testimony. *Bank of Utica* v. *Smedes*, 20 Johns. 168. See the opinion of the court on this point; it is not in the marginal note of the case. S. P. 4 Cranch. Rep.

I do not mean to contend that the notice may not be proved, by presumptive evidence, where it is clear and unequivocal. As where a party "promises to pay the note, or acknowledges his liability, this would, on plain and obvious principles, be presumptive evidence of notice, and would stand until rebutted by negative proof, showing the notice was illegal, or insufficient, in which last case, in addition to the promise, evidence of knowledge of the laches at the time of the promise would be necessary."

But the evidence must be express, or the facts proved must be clearly such as to raise a strong presumption of the fact of notice.

In the case in 20 Johnson, 168, the notary said he sent notices by mail; but he did not state how he directed them. The court could not presume he directed them properly. So if he stated he gave notice, but omitted the time, it could not be presumed it was done in time.

So where the proof was that notice was given, either on the 20th or 21st, the former would have been good, the latter not; the court could not presume it was the former. *Bank of Utica* v. *Smedes*, 282.

3. With the above principles in view, let us examine the statement of the notary.

It will not be questioned that all the facts, which the law deems requisite to constitute notice, must be proved. If the law requires notice to be given on the day of protest, or if not given on that day, requires it to be sent by the first mail, which leaves after that day, it is unquestionably required of the plaintiff to prove these facts. It will not be sufficient farther to prove that

he sent notice the next day. That alone, is not sufficient; one of the essential requisites to make it good, is wanting, to wit: that he sent it in time next day, to go by the first mail which leaves after the day of the protest.

The rule of law is clearly settled, that a holder need not give notice on the very day of the protest; but if he resorts to the mail, and does not give it that day, he must prove he sent it by the first mail of next day, or by first mail which leaves after the day of protest. *Townsby* v. *Springer*, 1 Louisiana Rep. 122. *Whittlesby* v. *Dean*, 2 Aiken's Rep. 263. 4 Con. Peters' Rep. 163. 17 Mass. Rep. 449. 9 Peters' Rep. 33. 17 Maine Rep. 381.

The rule is thus laid down by the supreme court of the United States: "Notice of the default of the maker, must be put into the office early enough to be sent by the mail of the succeeding day." 9 Peters, 33. 2 Wheaton Rep. 373.

In *Whitewell* v. *Johnson*, 17 Mass. Rep. 449, the court says: "That notice put in the office, the next day after demand, is sufficient, if put in in season to go by the mail of that day."

The courts of England also lay down the rule, that notice must be sent by the next practical mail after demand; but if delayed until next day, it must be sent by the mail of that day. *Derbyshire* v. *Parker*, 6 East. 3. And this is the rule laid down by Judge Bayley. Bayley on Bills, 262.

In *Goodman* v. *Norton*, 17 Maine Rep. 381, the court reviews the authorities, and decides "that where the indorser is notified of the default of maker, by mail, the notice must be put into the post office on the day of the demand, or in season to be sent by the first mail of the succeeding day."

The same point is decided in the case of *Townsley* v. *Springer*, 1 Louisiana Rep. 122, and in 2 Aiken, 263.

The evidence of notice in this case, falls far short of the above rule. The notary says he sent it next day at 9 o'clock, A. M.; but he does not say in time for the mail of that day, or in time for the first mail after the day of protest. The mail may have left at six, seven, or eight o'clock. One of the essentials to make it a good notice, is wanting. If the law be that it must

be, sent by the first mail after the day of protest, it is of course incumbent on the plaintiff to prove this. Proof which falls short of this, is, upon established principles, clearly insufficient. But,

4. There is another equally fatal objection. The notary says he sent the notices to Downs, but he does not tell us how he sent them, whether by mail, private messenger, by a steamboat, or by some third person. To make it a good notice, it must be sent by the usual and ordinary modes: to wit, by mail, or, perhaps, a special messenger employed for the purpose, and sent immediately, would do. But surely, notice sent by a third person, or some man who promises to take it, is not sufficient. We cannot presume he sent it one way more than another. If sent by mail it would be good, if sent by a steamboat or some third person, it would not be good. Now he has not informed us which of these ways he adopted. And where one would be good and another bad, and it is not shown which, the notice is clearly insufficient, as decided in the case of the *Bank of Utica* v. *Smedes*, 20 Johns. Rep. 282. 10 Johns. Rep. 187.

I think either of these grounds is clearly sufficient to reverse the judgment. I make no comment, therefore, on the other charges which were refused. I am, however, inclined to think the court was correct, for although, in regard to third persons who are holders of paper, payable at a bank, it must be shown the note was there at the closing of the bank; because, until that time, by the usage of the bank, it is not due; yet, where the bank itself holds the paper, the presumption of course would be that it was in the bank, for it could not well be anywhere else.

*Harrison* and *Holt*, for defendants in error.

The notary who protested the note sued on, having died before the trial, his protest and notarial record, duly certified, were properly admitted as evidence to prove demand and notice of non-payment. This court so held in the case of the *Planters Bank* v. *Bernard*, 4 Howard. Upon common law principles, they were clearly admissable as memoranda made

by a deceased witness, of transactions occurring in the usual course of his business.

The notary states in his protest, that on the 21st day of October, 1836—being the day on which the note fell due—he went to the Planters Bank, presented the note, and at the request of the holder, demanded payment, which was refused by the teller. The jury had a right to presume, from the whole of this statement taken together, that the demand was made during banking hours. It was the duty of the notary so to have made it; and from the fact that he seems to have made his way into the bank, and up to the teller's desk, and to have been answered by that officer that the note could not be paid, the inference is irresistible that the presentment and demand occurred while the bank was open and engaged in its ordinary business. This, we insist, fixed the liability of the indorser, so far as the demand was concerned; and if the note was subsequently withdrawn before the expiration of banking hours, it was a matter of defence to be shown by those who rely on it. The rule is understood to be this: that where the plaintiff, instead of a formal demand of payment, proves that the note was in the bank where it was payable on the day of its maturity, he must show, affirmatively, that it remained there during the whole of banking hours; but that where he has established by his testimony a formal demand, it is incumbent on those who seek to resist the force of this testimony, to prove that the note was subsequently withdrawn before the bank closed, if in fact such withdrawal occurred. In the case heretofore decided by this court, in which the necessity for making demand during banking hours was asserted, the rule now insisted on was recognized. It was there shown by way of defence, that the paper declared on had been permanently withdrawn.

The plaintiff in error assails with more show of confidence, the sufficiency of the proof of notice as to him. Upon this point, the record, after giving the name of A. C. Downs and others, with their respective residences or post offices, concludes succinctly by saying, "all notices served this 22d October, 1836, at 9, A. M., according to their several directions specified."

The specification referred to, immediately preceded this statement; and in it, Mount Albon, Miss., was set down as the post office of the plaintiff in error. Taking the whole together, no interpretation could be indulged by court or jury, but that the notice for Downs was addressed to him at Mount Albon, Miss., which is proved to have been his post office, and was deposited in the post office at Natchez, at 9 o'clock, A. M. of the day succeeding that on which the protest was made. Was this sufficient diligence? Had he resided in Natchez, it is well known that notice delivered to him, or left at his residence at any time during the day after that of the protest, would have fixed his liability. Did the fact that he resided one hundred miles from Natchez, require that he should receive earlier notification than if he had resided in the city? In regard to persons to whom notice is to be transmitted by mail, it is the depositing of the notice in the post office, and not its arrival or receipt by the party, which constitutes "service." Downs, then, in legal contemplation, was notified at 9, A. M. of the day after the protest. Can any adjudged case, or *dictum*, or tradition in the law be found, which would require that the notice should have been given at an earlier day, or an earlier hour?

The defendant in the court below, asked the circuit judge to charge the jury that to entitle plaintiff to recover, they must prove that the notice was deposited in the Natchez post office in time to go out by the first mail of the day succeeding that on which the protest was made; which was refused, and correctly, it being well settled that if it be deposited in time to go by either mail of that day, it will be sufficient. 17 Mass. R. 449. It is a fact connected with the United States Government in one of its departments, which will be judicially recognized here, that all mails leaving earlier than 9 o'clock, A. M., are "made up" the preceding evening or night; so that if a mail left Natchez for Mount Albon, on 22d of October, earlier than that hour, the notice for Downs could not have been forwarded by it, unless it had been placed in the post office on the 21st— the day of the protest. But this is a degree of diligence or hurry, which has never been required or contemplated. The

general rule as laid down, that the notice must be deposited in time to go by a mail of the day succeeding that of the protest, must be understood with the proviso that this mail does not set out so early, that to secure the transmission of a letter by it, it would have to be placed in the officè on the preceding evening.

The diligence exercised in this case was certainly as great, if not greater than ordinary. In the absence of all rebutting proof, the jury were fully authorized in believing that the notice at 9, A. M. was intended to go by a mail of the 22d, if one set out on that day.

*Jacob S. Yerger*, in reply.

The conclusion of Chancellor Kent, in a note of third volume of his commentaries, p. 106, that the modern cases establish a different conclusion from that I have insisted on, is relied on as authority by the other side. The conclusion of the chancellor is perhaps not altogether correct, as the authorities he cites, (which I have been able to examine,) do not, to the extent he lays down the rule, sustain him, except one, and that is merely a *dictum* of C. J. Best.

In the last edition of Chitty on Bills, (ed. of 1842, p. 485,) the rule is thus laid down : " when the parties do not reside in the same place, and the notice is to be sent by the general post, then the holder must take care to forward notice by the post of the next day after dishonor, whether that post sets off early or late; and if there is no post on that day, by the very next."

This edition of Chitty is taken from the ninth and last London edition, and it would be strange if the decisions adverted to by Chancellor Kent, had changed the law, that it should be thus stated in this edition.

This rule is laid down in *Derbyshire* v. *Parker,* 6 East. *Bray* v. *Halden*, 5 Maule & Selwyn, 68. *Williams* v. *Smith*, 2 Bar. & Alderson, 496. *Jerome* v. *Brag.* These cases are all stated in the note in Chitty at p. 485–86.

In America, Chancellor Kent admits the rule is so decided in *Lenox* v. *Roberts*, 2 Wheaton, and recognized in 9 Peters, 431; but he thinks this rule, according to the English cases cited by him, is too restricted.

In addition to the above cases, the precise point is decided in 5 Shepley's Maine Rep., or 17 Maine Rep. before cited. It is also explicitly decided in the case of ——v.——, 4 Washington's Circuit Court Rep.

The rule thus laid down is certain and fixed, and an examination of the cases cited by Chancellor Kent, will prove clearly that the conclusion he drew from them, was, I apprehend, a mistaken one. The cases he cites in his last edition, are, 2 Caines' Rep. 343. 3 Bosanquet & Puller, 601. 4 Bingham's Rep. 715. 5 Maule & Selwyn, 69. 1 Moody & Malkin, 61. 2 Taunton, 224.

It is a remarkable fact that several of these cases are cited by Mr. Chitty, and very correctly, to prove the rule as we have laid it down.

In the first case cited, 2 Caine's Rep. 343, the question did not arise. That case decided, first, that if the last day was Sunday, demand should be made on Saturday. Second, that an accommodation indorser is entitled to notice, although the maker is insolvent. And, third, that notice given before note fell due, is a nullity.

The next case is *Haynes* v. *Berks*, 3 Bos. & Puller, 601, cited Chitty on Bills, 10 ed. note to p. 488. In this case, the note fell due on Saturday—notice was sent by the post on Monday, but was not received until Tuesday; and the court held it sufficient. This was clearly right. Sunday is always excluded, and not counted as a day to receive or give notices. Here, then, notice was sent by the post of the next legal day.

The next case is *Hawks* v. *Salter*, 4 Bingham, 715, reported 15 Com. Law. Rep. 125. Cited Chitty, 10 ed. 487. This case decides where a bill is dishonored, and notice is received on Sunday, it is to be considered as only received on Monday, and the party receiving it is not bound to open the letter until Monday; and although a post may go out Monday, he is not legally bound to forward notice until Tuesday. This case only proves what we all admit—that notice need not be sent on the same day.

It is true that Best, C. J. said he was of opinion that if a

note is dishonored on Saturday, notice sent by the mail of Tuesday would be sufficient. This *dictum* is the only semblance of authority to sustain Chancellor Kent's opinion. It was uncalled for by the facts of the case, and does not appear to have been assented to by the other judges.

The next case is *Bray* v. *Hayden*, 5 Maule & Selwyn, 68. Cited Chitty, 10 ed. p. 486, in note. This case is directly opposed to the chancellor's views. It decides that notice must be sent by the post of next day; but where there are two posts, it may be sent by either. It also decides that each indorser has a day to give his preceding indorser notice, and that Sunday is not to be counted. It simply decides, then, that if two mails go out on the same day, the party may send it by either; and that it falls on him to show that it was put in the post office early enough to go by one or the other.

The next is *Geill* v. *Jeremy*, Moody & Malkin Rep. 61. Cited 10 ed. of Chitty, p. 486, note E. This case decides the very point against the conclusion of the chancellor, and it is strange it should have been cited by him. The case simply decides, that each party who receives notice of dishonor, is not obliged to forward notice to his immediate indorser on the very day he receives it; but he must send it by the post of next day, and if there be none, he must send it by the next post after he receives it, which leaves the place—that he need not put it in the post office the next day, if no mails leave on that day—that there is no necessity for leaving it in the post office if there is no mail, and that it is sufficient if put in in time to go by the next mail.

The court lays down the rule thus: "the general rule is, that the party need not write on the very day he receives notice. If there be no post on the following day, it makes no difference. The next post after the day in which he receives the notice, is soon enough."

The last case cited by him is *Jameson* v. *Swinton*, 2 Taunton, 224. The sole question in this case was, whether notice on the proper day, delivered at 9 o'clock, at night, was sufficient.

It then appears, the rule, as I contend for it, is laid down in

the elementary writers, as settled law. It is supported by all the authorities, English and American, before cited, and is opposed alone by the *dictum* of a single judge.

2. But I must call the attention of the court to another point made in the opening argument, and which, to my mind, is equally decisive of the case. Notice to be good, must be personal, or sent by mail; or a special messenger may, in some instances, be sent. This notice does not show how it was sent. It says notices served or sent, but does not state how, whether by mail or by private hand, or by a casual person, or by steamboat. Surely, if mail service is resorted to in lieu of personal service, it must be shown to be sent by mail. Suppose it were sent by some traveller, would it be good? Surely not. It is incumbent on the holder to show clearly, how he gave the notice. 2 Hill's Rep. 587. Chitty on Bills, 10 ed. 480. 2 En. Com. Law Rep. 405. 15 Com. Law Rep. 125. *Bank of Utica* v. *Smedes*, 20 Johns. Rep. 168.

3. Another question is this; the notarial statement is only equivalent to a deposition. He swears he sent notices; but he does not say what the notices were.

Now, although no particular form of notice is required, yet it is settled it must be proved that the notice given, imported or stated the bill was dishonored. 2 Hill's Rep. 587, and recent cases there cited. This says notice sent. It does not say notices of dishonor. The court cannot know what this notice was for, except by inference.

Mr. Chief Justice SHARKEY delivered the opinion of the court.

The plaintiff in error was sued by the Planters Bank as the indorser of a promissory note, made by Abijah Downs, payable and negotiable at the Planters Bank, at Natchez. The only question in the case is as to the sufficiency of the notice to charge the indorser.

On the trial, the plaintiff below offered the record made by the notary who protested the note, the notary having died before the trial. Prefixed to the note was a designation of the places at which the several parties would receive notice, the

defendant below having designated "Mount Albon Post Office."
The evidence of notice, or memorandum made by the notary,
is in these words, to wit: "All notices served' this 22d; day of,
October, 1836, at nine o'clock, A. M. according to their several
directions specified. T. R. notary public." The note fell·due,
and was protested on the 21st of October; the plaintiff proved
that Mount Albon was the nearest post office to defendant. R.
M. Gaines, a witness for the defendant, stated that the bank at
the time of protest had regular business hours from ten o'clock,
A. M. to two o'clock, P. M., and that, according to the custom
of the bank, debtors had until the close of business hours to pay
their notes; that notes made payable in the bank were usually
kept in the teller's drawer on the day of their maturity. This
was all the evidence offered, and the defendant's counsel asked
instructions from the court, amongst others the following, which,
the court refused to give, to wit: "That the statement of the
notary at the foot of the notarial record (which is above set out)
is not sufficient evidence of notice, or diligence to give notice, to
charge the indorser.

"That the plaintiff must show that the notice was put in the
post office, at Natchez, in time to go out by the first mail of the
day succeeding the protest.

"The plaintiff must show all the facts necessary to charge the
indorser without leaving anything to intendment of inference."

The court did instruct the jury, amongst other things, that
notice of protest must be shown to have been put in the post
office, at Natchez, in time to go out by the first mail of the day
succeeding the protest, if the first mail of that day did not leave
at an unusually early hour; that whether the notice was prop-
erly sent, the jury are to judge from all the facts and circum-
stances in the case, and if they believe from them that the notice
was properly sent, they must find for the plaintiff, and, if not,
then for the defendant. That they were to weigh the evidence
and decide according to the preponderance of proof; to the giv-
ing of which instructions, and the refusal to give those asked,
defendant excepted, and a verdict being found against him, he
moved for a new trial, because the judge misdirected the jury,

and because the verdict was contrary to the law and the evidence. The motion was overruled, and thereupon the defendant's counsel embodied the evidence in a bill of exceptions, and brought up the case by writ of error.

It is not necessary that we should decide on every point which is presented by the record and insisted on in the argument. If there be good grounds for reversing the judgment on errors which are beyond doubt, it will be unnecessary for us to attempt to settle such points as may be more questionable. We think the verdict was contrary to law and evidence, and that it should therefore be set aside.

In order to constitute a sufficient notice to charge an indorser, if it is to be sent by mail, it must, at furthest, be put into the post office in time to go by the mail of the day next succeeding the protest, if there may be a mail which goes on that day, and, if not, then by the first mail which goes afterwards. The holder need not put the notice in the office on the same day the note is protested, but he must on the next day in time for a mail of that day, unless it leaves at an unreasonably early hour. Chitty on Bills, 10 ed. 484. 3 Kent's Com. 105-6. 17 Mass. Rep. 449. 20 J. R. 372. 2 Wheaton, 377. 3 Con. Rep. 489. 17 Maine Rep. 381. Story on Bills, 315.

This rule has never been departed from in this country in any case which has fallen under my notice, although there seems to have been some countenance to a different one in England, particularly in the case of *Hawkes* v. *Salter*, 4 Bingham, 715. Chancellor Kent, in a note to his commentaries, has cited this and some other cases, and concludes that the rule is enlarged by them, but I apprehend that the large majority of cases will be found to correspond with the rule which prevails in this country.

It is also a rule of law that the plaintiff must prove everything which is necessary to charge an indorser. The contract of an indorser is strictly conditional. He undertakes to pay if the maker does not, provided he is duly notified of the demand and refusal. These are conditions precedent to his liability, and there is an obligation on the holder to make the demand

and give the notice; and as the indorser is not liable unless these things have been performed, it devolves on the holder to prove that he has performed the conditions precedent, before he can compel the indorser to perform his contract. Chitty lays down the rule in the most unqualified manner, that it is incumbent on the holder to prove distinctly, and by positive evidence, that due notice was given to the party sued, and that it cannot be left to inference or presumption. Chitty on Bills, 10 ed. 479. This doctrine is taken from the decision of Lord Ellenborough, in the case of *Lawson* v. *Sherwood,* 1 Stark. Rep. 314. Without pretending to say that it is incumbent on the plaintiff to introduce positive proof, or to settle what grade of proof will be required, we feel well satisfied that he must make satisfactory proof that he has performed all that the law required of him to perform. He must prove everything necessary to charge the indorser. This is clearly the rule of the American cases. 3 Kent's Com. 104. 4 Leigh's Rep. 37. 17 Mass. Rep. 449. In the case of *Smedes* v. *The Bank of Utica,* 20 J. R., the court said, the question is not what inference the jury might draw, but what testimony does the law require in this case. We have seen that this is a condition precedent, and that strict proof is required; the law has allowed the indorser this protection; nothing short of clear proof of notice shall subject him to liability. To the same effect is the case of *Goodman* v. *Norton,* 17 Maine Rep. The obvious meaning of the rule is, that the notice which the plaintiff is required to prove must be a legal notice; that is, a notice sent in due time and properly directed.

According to these rules it will be apparent that the court gave rather too much latitude in the charge. It is also apparent that the evidence did not justify the verdict.

The notary states that the notices were served the 22d of October, at nine o'clock, A. M. If it be admitted that "served" means sent by the mail, the indorser having resided at a distance, this does not amount to an affirmative, showing that the notice was put in the office in time for the first mail, or any mail of that day. It is quite probable that the mail left before that hour; but it will not do to rest on probability. To make

the notice sufficient, the plaintiff should have proved the hour at which the mail left.    There was no proof on the subject, and the jury must have found their verdict on conjecture.    It is not a verdict on complicated or doubtful evidence, but a verdict without evidence.    It was not a compliance with the rule of law, which requires the plaintiff to prove that he put notice in the office in time for the mail of the next day after protest, for him to prove that he put it into the office at nine o'clock, A. M., for it by no means follows that this was in time for the mail. Nor was there any evidence that the mail of that day started at an unusually early hour, which might amount to an excuse for not sending it by the first mail which left after the day of protest.

For these reasons the judgment must be reversed and a new trial granted.